415 So.2d 997 (1982)
Fannie G. LEGRONE
v.
NEW ORLEANS PUBLIC SERVICE, INC. et al.
No. 12829.
Court of Appeal of Louisiana, Fourth Circuit.
June 8, 1982.
*998 Bartholomew & Jones, Patrick E. Jones, Metairie, for plaintiff-appellee.
Floyd F. Greene, New Orleans, for defendant-appellant New Orleans Public Service, Inc.
Before REDMANN, C. J., and GARRISON and BYRNES, JJ.
REDMANN, Chief Judge.
In this appeal from a judgment on jury verdict for $250,000 damages, defendant transit company argues both that it was not liable for its passenger's injury and that, on various grounds, the award was excessive. We affirm.
The route of defendant's bus in New Orleans included a right turn from Baronne street onto Erato street. The bus driver saw the bus just ahead of her experience difficulty with the turn because of automobiles parked close to the corner on both sides of Erato. She therefore pulled into the left lane of Baronne to make her right turn, so as to permit an entry into Erato on a less sharp turn. She was surely careful in many respects: she stopped the bus and even alighted from her seat and went to the door so as to survey her path to assure that she would not collide with the parked cars. But as she made her wide turn right from the left lane (very slowly, she testified), defendant taxicab, passing on her right intending itself to make a right turn, collided with the bus as both turned. (The taxicab defendants are not involved in this appeal.)
We simply cannot fault the jury on that liability call, especially given the basic rule that the transit company bears the burden of exculpating itself once injury to its passenger is shown. One may sympathize with the driver, but the inference was surely available to the jury that the driver did not exert the required care during the turn to prevent collision with any following driver in the right lane of Baronne who might suppose it safe to pass the bus because it was in the left lane. Liability must therefore be affirmed.
*999 On quantum, defendant argues the award is improper because it is more than the petition asked; it necessarily includes a knee injury not shown to be caused by the accident; and it is in any case too much.
That an award exceeds plaintiff's prayer is not grounds for reduction. La.C. C.P. 862 obliges a final judgment to grant the correct relief, even if not prayed for. The court may therefore award damages greater in amount than the amount prayed for by the petition, Cambrice v. Fern Supply, 285 So.2d 863 (La.App. 4 Cir. 1973); Wexler v. Martin, 367 So.2d 111 (La.App. 4 Cir. 1979), writ denied 369 So.2d 1352.
The knee problem, the jury could reasonably conclude, was related to the accident. Plaintiff indicated trauma to her head, neck and knee immediately after the accident upon admission to Charity hospital. That the knee injury did not fully manifest itself until six months later could not prevent recovery if causation is shown. The question presented by conflicting medical testimony was whether the accident caused the serious knee problem. Dr. Watermeier, the treating orthopedist, concluded that the problem was caused by the accident; Dr. Williams concluded it was congenital. We are simply not in a position to conclude that the jury was "clearly wrong," Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), in its conclusion that the injury was caused by the accident.
The $250,000 award is argued to be excessive in that it must include a substantial amount for lost earnings when plaintiff was unemployed and it exceeds prior awards for each element of plaintiff's injuries.
An award for loss of earnings is not prevented by the plaintiff's being unemployed or underemployed as of the accident; Folse v. Fakouri, 371 So.2d 1120 (La.1979). There is evidence from which one could estimate that plaintiff's disability to work at all would cause a loss during her 33.6-year work-life expectancy of from about $130,000 to about $270,000, depending on whether minimum wages or plaintiff's one-time wage of $6.52 hourly is used. Those figures employ a 10% inflation and 8% discount rate, which may be questioned: but the loss is in any event substantial. Dr. Watermeier testified that plaintiff's neck and knee injuries left her 25% permanently disabled, and that further knee surgery would increase her disability another 10%. Her condition prevents prolonged standing or stooping, or operating machinery with her foot; she could not lift heavy weight from the floor.
The question of general damagesif the jury may have in its deliberations separated those from lost earning power and over $11,000 of medical expensesis governed by the basic rule of C.C.1934(3) and the jurisprudence giving full implementation to the jury's "much discretion" under that article. Reck v. Stevens, 373 So.2d 498 (La. 1979), obliges a reviewing court to leave general damages undisturbed unless the court is able to articulate a clear abuse of the trier of fact's much discretion.
All factors being considered, we simply cannot articulate any error in the lump-sum award of $250,000 for medical expenses, lost earning capacity and general damages.
Affirmed.